FILED

Dec 13 2017, 6:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Dana M. Eberle-Peay | Michael C. Cooley |
| McNeely Stephenson | Eric N. Allen |
| New Albany, Indiana | Allen Wellman McNew |
| | Harvey, LLP |
| | Greenfield, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Childress Cattle, LLC, | December 13, 2017 |
| *Appellant-Claimant,* | Court of Appeals Case No. 70A05-1706-EU-1442 |
| v. | Appeal from the Rush Superior Court |
| The Estate of Roger F. Cain, Christie Cain, Personal Representative, | The Honorable Brian D. Hill, Judge |
| *Appellee-Respondent* | Trial Court Cause No. 70D01-1602-EU-5 |

**Baker, Judge.**

[1] Childress Cattle, LLC (Childress Cattle), filed a claim against the Estate of Roger F. Cain (the Estate), alleging that Roger Cain's business, R&C Cain Farms (Cain Farms) owed it money. The trial court disallowed Childress Cattle's claim. Childress Cattle appeals, arguing that the trial court erred in excluding certain evidence. Finding no error, we affirm.

## Facts

[2] Roger Cain (Roger) was the sole proprietor of Cain Farms. Childress Cattle is a cattle broker located in Kentucky and owned by James Childress (James) and Bonnie Childress (Bonnie). Roger occasionally purchased cattle from Childress Cattle. Each purchase was separate and distinct and was conducted verbally by telephone. Childress Cattle's records of these transactions consist of undated handwritten notations on documents from other purchases that Childress Cattle made from other brokers and stockyards.

[3] On January 13, 2016, Roger died. On February 23, 2016, the Estate was opened, and his widow, Christie Cain (Christie), was appointed personal representative. On April 5, 2016, Childress Cattle filed a claim against the Estate for $217,770.37 as recovery of payment for certain cattle that Roger had allegedly ordered and that were allegedly delivered to Cain Farms sometime before Roger's death. On April 21, 2016, the Estate disallowed the claim. On November 17, 2016, Childress Cattle amended its claim to the amount of $294,631.98.

[4]  A hearing took place on April 17, 2017. The Estate objected to the testimony of James and Bonnie, arguing that they were incompetent to testify under Indiana's Dead Man's Statute.[1] The Estate also objected to the admission of Childress Cattle's invoices to Roger, arguing that the invoices required context to interpret, which could be provided only by the testimony that was barred under the Dead Man's Statute.

[5]  The trial court did not allow James and Bonnie to testify, finding that they were incompetent under the Dead Man's Statute, and did not admit the invoices into evidence, finding that the testimony of James and Bonnie was necessary to establish a foundation for such evidence and that they would continue to be incompetent witnesses as to the admission of the evidence. The trial court allowed five truck drivers to testify on behalf of Childress Cattle regarding specific deliveries of cattle they made to Cain Farms for Childress Cattle. The trial court also allowed the testimony of an expert witness about standard practices in the cattle industry. The trial court admitted Childress Cattle's exhibits of trucking invoices, veterinary testing records, and some checks that Childress Cattle had received as payment from Cain Farms.

[6]  On May 30, 2017, the trial court disallowed Childress Cattle's claim, finding that it did not prove that it had not been paid in full. The trial court provided that James and Bonnie could make offers of proof as to their testimony and

---

[1] Ind. Code § 34-45-2-4.

business records either by affidavit or testimony in open court. On June 22, 2017, Childress Cattle filed two offers of proof, one by James and one by Bonnie. Childress Cattle now appeals.

# Discussion and Decision

Childress Cattle argues that the trial court erred in excluding the testimony of James and Bonnie and in excluding Childress Cattle's invoices as evidence.

# I. Dead Man's Statute

Indiana's Dead Man's Statute provides in relevant part:

(a) This section applies to suits or proceedings:

(1) in which an executor or administrator is a party;

(2) involving matters that occurred during the lifetime of the decedent; and

(3) where a judgment or allowance may be made or rendered for or against the estate represented by the executor or administrator.

***

(c) This section does not apply to a custodian or other qualified witness to the extent the witness seeks to introduce evidence that is otherwise admissible under Indiana Rule of Evidence 803(6).

(d) . . . [A] person:

(1) who is a necessary party to the issue or record; and

(2) whose interest is adverse to the estate;

is not a competent witness as to matters against the estate.

I.C. § 34-45-2-4.

[9] The Dead Man's Statute establishes as a matter of legislative policy that claimants to the estate of a deceased person should not be permitted to present a court with their version of their dealings with the decedent. *In re Estate of Rickert*, 934 N.E.2d 726, 731 (Ind. 2010). Our Court has explained that

> Generally, when an executor or administrator of an estate is one party, the adverse parties are not competent to testify about transactions that took place during the lifetime of the decedent. Furthermore, the general purpose of the statutes is to protect decedents' estates from spurious claims. The Dead Man's Statutes guard against false testimony by a survivor by establishing a rule of mutuality, wherein the lips of the surviving party are closed by law when the lips of the other party are closed by death.

> We have held that the Dead Man's Statutes apply to all cases in which a judgment may result for or against the estate, notwithstanding the parties' positions as plaintiff or defendant. In addition, neither the express language of the statutes nor accepted concepts of fairness should preclude application of the statutes so long as no statements made by the decedent are admitted through depositions or public records made during his life.

*J.M. Corp. v. Roberson*, 749 N.E.2d 567, 571 (Ind. Ct. App. 2001) (internal citations omitted).

## II.  Testimony of James and Bonnie

Childress Cattle first argues that the trial court erred by precluding Bonnie from testifying about conversations that took place with Christie after Roger's death. Where the trial court rules on witness competency, the ruling will be reversed only when the ruling is against the logic and effect of the facts and circumstances before the trial court.  *Roberson*, 749 N.E.2d at 571.

[10]  Initially, we note that neither party filed an appendix.  The purpose of an appendix in civil appeals is to present the Court with copies of the parts of the record "that are necessary for the Court to decide the issues presented."  Ind. Appellate Rule 50(A)(1).  "The appellant shall file its Appendix on or before the date on which the appellant's brief is filed.  The appellee shall file its Appendix, if any, with its appellee's brief."  App. R. 49.  "Any factual statement shall be supported by a citation to the volume and page where it appears in an Appendix, and if not contained in an Appendix, to the volume and page it appears in the Transcript or exhibits . . . . Any record material cited in an appellate brief must be reproduced in an Appendix or the Transcript or exhibits."  App. R. 22(C).

[11]  Childress Cattle did not file an appendix, instead submitting only the transcript of the hearing, the exhibits that the trial court admitted during the hearing, and the trial court's order.  Childress Cattle should have filed an appendix that

included all pertinent filings, especially the offers of proof that James and Bonnie submitted to the trial court and its invoices. Although both parties cite the offers of proof, no such documents are in the record.

[12] We will nonetheless endeavor to address the issue despite the lack of an appendix and supporting record. According to Childress Cattle, Bonnie is prepared to testify about conversations with Christie that took place after Roger's death regarding the overdue balance on Cain Farms' account in the amount of $294,631.98 for the cattle ordered by, delivered to, and accepted by Roger on behalf of Cain Farms. Bonnie is also prepared to testify that upon Christie's request, Bonnie faxed additional copies of all relevant invoices to Christie to facilitate settlement of the overdue amount. According to the Estate, the language of Bonnie's offer of proof indicates that the conversations with Christie took place during Roger's lifetime; that Bonnie does not allege that she had any discussions with Christie after Roger's death; and that Bonnie does not allege that Christie agreed that Roger owed Childress Cattle a balance. Childress Cattle does not address the substance of James's offer of proof.

[13] Childress Cattle argues that because the conversations to which Bonnie wants to testify took place after Roger's death, the Dead Man's Statute does not apply and cannot preclude her from testifying. But even if Bonnie's proposed testimony is about conversations with Christie that took place after Roger's death, the substance of those conversations involves oral contracts that Childress Cattle and Roger may have formed during Roger's lifetime. In essence, Bonnie's proposed testimony would present the trial court with

Childress Cattle's version of its dealings with Roger, who cannot testify to his version of any oral contracts because his lips are closed by death. This proposed testimony, therefore, is precisely what the Dead Man's Statute aims to preclude.

[14] Childress Cattle also argues that the trial court erred by precluding James and Bonnie from testifying about all other matters. Childress Cattle never specifies any other proposed testimony but rather states generally that it can establish the amount of its claim "with testimony allowed by the Dead Man's Statute as well as with the admission of further evidence." Appellant's Br. p. 17. Without facts about the substance of the proposed testimony on other matters, we cannot review whether it would be allowed or precluded under the Dead Man's Statute. Accordingly, Childress Cattle's argument regarding testimony on other matters is unavailing.

[15] In sum, the trial court did not err by excluding the testimony of James and Bonnie.

## III. The Invoices

[16] Childress Cattle next argues that the trial court erred by excluding its invoices as evidence. Specifically, Childress Cattle argues that the Dead Man's Statute allows it to present evidence that is otherwise admissible under Indiana Rule of Evidence 803(6).

[17] The Dead Man's Statute provides that it "does not apply to a custodian or other qualified witness to the extent the witness seeks to introduce evidence that is

otherwise admissible under Indiana Rule of Evidence 803(6)." I.C. § 34-45-2-4(C). Indiana Rule of Evidence 803(6) governs the exception to hearsay evidence regarding records of regularly conducted business activity and provides that the following are not excluded by the rule against hearsay:

> (6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:
>
> > (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;
> >
> > (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> >
> > (C) making the record was a regular practice of that activity;
> >
> > (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(9) or (10) or with a statute permitting certification; and
> >
> > (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

[18] We note again that the failure to file an appendix frustrates our analysis of this issue, but we will still consider it. According to Childress Cattle, in Bonnie's offer of proof, Bonnie identified herself as the company's office manager and accountant and stated that she would testify that she maintains the files for each

customer, including for Cain Farms, which contain all relevant invoices, identification of the cattle purchased, shipping invoices, and payments received; that the records are created in the normal course of business; that she is familiar with the transactions recorded; that the records are created at or near the time of the recorded events; and that Childress Cattle relies on these records to track sales, deliveries, and accounts receivable.

[19] Childress Cattle asserts that the accuracy of its invoices is supported by evidence already admitted, including testimony from five truck drivers regarding eight occasions in 2015 on which Cain Farms accepted cattle delivered from Childress Cattle. But Childress Cattle does not point to any testimony from the truck drivers that establishes that the invoices are regularly conducted business records under Rule 803(6), nor do we find any. Testimony regarding Roger's veterinary records and Cain Farm's past payments to Childress Cattle is similarly unhelpful in establishing that the invoices are records of regularly conducted activity.

[20] Childress Cattle also contends that the reliability of its invoices would be bolstered if the trial court allowed testimony about its invoices for the purchases of cattle from the stockyards, including the dates of those purchases, and the market price of cattle on and around certain dates. According to Childress Cattle, this evidence "conclusively establishes" that cattle was delivered to Cain Farms at Childress Cattle's behest and that Cain Farms paid Childress Cattle $380,607.65 as partial payment. Appellant's Br. p. 15. Yet Childress Cattle fails to include in its brief any specific facts that would "conclusively establish"

these points, nor can it point to an appendix to support its contentions. Further, we fail to see how invoices relating to transactions between Childress Cattle and third parties establishes that invoices relating to totally separate and distinct transactions between Childress Cattle and Cain Farms are records of regularly conducted activity.

[21] Moreover, although Childress Cattle argues that its invoices "establish the total amount of the claim," it also acknowledges that its invoices "will show that some of the payments made by the Estate [to Childress Cattle] match precisely to particular invoices, while other payments made by the Estate are clearly partial payments toward the total account balance with Childress [Cattle]." *Id.* at 19. Without specific facts, the offers of proof, or an appendix to support its claim, Childress Cattle is essentially asking this Court to take it at its word, regardless of any discrepancies that may exist in the evidence it wants to present, that its invoices are records of a regularly conducted activity. As a result, we find that the circumstances indicate a lack of trustworthiness that precludes the invoices from meeting the hearsay exception for records of a regularly conducted activity. The trial court did not err by not admitting Childress Cattle's invoices as evidence.

[22] The judgment of the trial court is affirmed.


Mathias, J., concurs.
Kirsch, J., concurs with a separate opinion.

Childress Cattle, LLC,

*Appellant-Claimant,*

v.

The Estate of Roger F. Cain,
Christie Cain, Personal
Representative

*Appellee-Respondent*

Court of Appeals Case No.
70A05-1706-EU-1442

**Kirsch, Judge, concurring.**

[23] I concur, albeit with much reluctance.

[24] The Dead Man's Statutes have long been criticized by legal scholars, practitioners and appellate judges. Today, they remain the law in a small minority of states.

[25] The effect of the Dead Man's Statute is to render interested parties—those persons who know more than any other where truth lies--incompetent as

witnesses. As Ed Wallis noted in the Cleveland State Law Review more than ten years ago, legal scholars have long called for repeal of the Dead Man's statutes.[2]

Professor McCormick labelled the statutes a "blind and brainless" technique, noting that while they seek to avoid injustice to one side, they may well create it for the other.[3]

Dean Wigmore stated that America's judicial system is based on presuming one is innocent until proven guilty, but by their very nature, Dead Man's statutes prevent an entire class of persons from testifying because of an assumption that all witnesses are bound to lie when the lips of one are sealed due to death.[4]

Finally, as noted several years ago by Michael Simon and William Hennessey in their survey of Florida law, "The mere mention of the [Dead Man's] statute is enough to make most practitioners shudder."[5]

---

[2] Ed Wallis. "Outdated Form of Evidentiary Law: A Survey of Dead Man's Statutes and a proposal for change, 53 Clev. St. L. Rev. 75 (2005)

[3] *Id.,* p. 101

[4] *Id.*

[5] Michael Simon and William Hennessey, "Estates, Trusts, and Guardianships: 1998 Survey of Florida Law" 23 NOVA L. Rev. 119, 145 (1998)

[29]     It is past time for Indiana to follow the lead of other states and repeal its Dead Man Statute.